<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HAMPTON FORGE, LTD., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> AGNES DESCAMPS and : <br> CHRISTIAN PERROD, : <br> : <br> Defendants. : | Civ. No. 03-4500 (GEB) <br><br> **OPINION** |

<u>**BROWN, District Judge**</u>

This matter comes before the Court upon: (1) plaintiff Hampton Forge, Ltd.'s ("Plaintiff" or "Hampton Forge") motion for entry of default judgment; (2) Ms. Barbara Hoffman, Esq.'s motion for sanctions against Plaintiff and its counsel; and (3) Plaintiff's cross-motion for sanctions against Ms. Hoffman. In addition, three motions filed prior to the original July 19, 2005 trial date, although moot, remain on the docket. They include: (1) Plaintiff's motion to bar Defendants from arguing that foreign law applies in this case; (2) Plaintiff's motion for summary judgment of Defendants' counterclaim; and (3) Defendants' cross-motion for summary judgment of Plaintiff's claims. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The Court, having considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78, and for the reasons set forth below, will: (1) grant Plaintiff's motion for entry of default judgment; (2) deny Ms. Hoffman's motion for sanctions; and (3) deny Plaintiff's cross-motion for sanctions. The Court will also dismiss the remaining motions as moot.

**I.     BACKGROUND**

Plaintiff is a company in the business of designing, manufacturing and distributing

flatware, cutlery and dinnerware.  (Amar Aff. ¶5, June 24, 2004.)  It is located in Eatontown, New Jersey.  (*Id.* ¶3.)  Defendant Agnes Descamps is a sculptor and designer.  (Descamps Aff. ¶3, June 14, 2004.)  Defendant Christian Perrod is Ms. Descamps' husband and alleged business partner.  (Perrod Aff. ¶4, July 2, 2004; Amar Aff. ¶25, June 24, 2004.)  Both Ms. Descamps and Mr. Perrod (collectively "Defendants") are citizens and residents of France.  (Descamps Aff. ¶2, June 14, 2004; Perrod Aff. ¶3, July 2, 2004.)  Ms. Hoffman is an attorney licensed to practice in New York, Washington and the District of Columbia.  (Hoffman Aff. ¶1.)  Throughout the course of this litigation, Ms. Hoffman has served as a French and English interpreter to *pro se* Defendants.

On September 22, 2003, Plaintiff filed a complaint against Defendants for breach of contract and related claims.  (Compl. ¶¶16-42.)  According to the Complaint, "[i]n or about February 2000, Hampton Forge engaged Defendants to assist in designing flatware for sale" and "provided Defendants with travel, training, advice, expenses and education so that [Ms. Descamps] could develop such designs."  (Compl. ¶13.)  The Complaint further alleges that "[i]n exchange for Agnes Descamps' work, Hampton Forge agreed to compensate Defendants" and that "[s]uch compensation has been paid to Defendants."  (*Id.* ¶14.)  According to the Complaint, "Defendants have claimed that Hampton Forge's works belong to them and not Hampton Forge" in alleged breach of the parties' contract.  (*Id.* ¶15.)  Plaintiff seeks both injunctive and monetary relief for Defendants' alleged breach.

On March 22, 2004, Defendants moved to dismiss the Complaint for lack of personal jurisdiction.  On April 6, 2004, Magistrate Judge Hughes conducted a telephone conference with the parties to set the briefing schedule for Defendants' motion and to discuss discovery by the parties.  Appearing during the telephone conference were Mr. Stephen F. Roth, Esq., as counsel for Plaintiff, and Defendant Ms. Descamps, who appeared *pro se*.  (Order, April 8, 2004.)  Ms. Hoffman also appeared during the conference as an interpreter, with the consent of Plaintiff.  (*Id.*)

Pursuant to that conference, Judge Hughes set a schedule for discovery by the parties and provided for Ms. Hoffman's continued involvement as an interpreter for Defendants. Specifically, the parties were ordered to "provide informal written document requests in lieu of formal discovery to Ms. Hoffman, who shall translate and provide the translated document requests to all parties." (*Id.*) Responses were also to be "provided to Ms. Hoffman, who shall translate such responses and provide them to the parties." (*Id.*) Judge Hughes also permitted Defendants to re-file their motion to dismiss with a brief and supporting affidavits. (*Id.*)

On June 14, 2004, Defendants filed a letter brief and affidavit in support of their motion to dismiss. Both the brief and affidavit were signed by Ms. Descamps. Mr. Perrod also filed an affidavit in support of the motion. (Perrod Aff., July 2, 2004.) In response to Plaintiff's subsequent opposition brief, Ms. Descamps filed an additional affidavit on June 30, 2004. According to her supplemental affidavit, "I have read the brief and declarations submitted by Plaintiff" and, "having read their papers, I believe my affidavit and that of my husband support that we did not and cannot fairly be said to have anticipated being hauled into court in the State of New Jersey." (Descamps Aff. ¶2, June 30, 2004.) Ms. Descamps further stated that "my husband and I . . . are unable to afford a New Jersey lawyer[,] . . . do not speak the language and have had to rely on the services of Ms. Hoffman as a translator." (*Id.* ¶32.) On June 30, 2004, Ms. Descamps also filed a letter requesting that the Court decide Defendants' motion to dismiss based on the submissions by the parties. In that letter, Ms. Descamps stated that "I am the Defendant pro se" in this matter and that "[m]y husband and I have not been able to afford a New Jersey lawyer to represent us and we cannot afford at this time to appear in court in New Jersey to contest the Court's personal jurisdiction over us." (Descamps Letter, June 30, 2004.) On July 14, 2004, the Court denied Defendants' motion to dismiss. (Mem. Op., July 14, 2004.)

Defendants subsequently filed an answer to Plaintiff's complaint on July 27, 2004. Defendants' answer was signed by both Ms. Descamps and Mr. Perrod individually as "Defendants *prose* [sic]". In their answer, Defendants asserted a counterclaim for breach of

contract against Plaintiff for their alleged failure to pay Ms. Descamps for her services. (Answer ¶¶43-51.) Plaintiff filed an answer to Defendants' counterclaim on August 9, 2004.

On October 15, 2004, Judge Hughes conducted an initial scheduling conference with the parties. Appearing by telephone were Plaintiff's counsel, *pro se* Defendants and Ms. Hoffman, who again served as an interpreter for Defendants. Pursuant to that conference, Judge Hughes set deadlines for discovery by the parties and scheduled a final pre-trial conference for May 25, 2005. (Order, October 18, 2004.) Judge Hughes specifically noted that "[s]ince all dates set forth herein are established with the assistance and knowledge of counsel, there will be no extensions except for good cause shown and by leave of Court, even with consent of all counsel . . . ." (*Id.* ¶20.) Judge Hughes further ordered that "[f]ailure to appear at subsequent conferences, or to comply with any of the terms of this Order, may result in sanctions." (*Id.* ¶21.)

Over the course of the next several months, the parties negotiated a potential settlement of the case. It eventually appeared that they reached settlement, and on December 16, 2004, the Court dismissed the case as settled. (Order, December 16, 2004.) On February 11, 2005, Plaintiff moved to vacate the Court's dismissal. According to Plaintiff, "the parties differed on what they believed were essential terms of the settlement, and thus, were unable to consummate the settlement." (Br. in Supp. of Pl.'s Mot. for Relief from Order of Dismissal at 2.)

On February 28, 2005, Ms. Descamps filed a letter and affidavit in opposition to Plaintiff's motion to vacate the Court's dismissal. In her letter, Ms. Descamps opposed Plaintiff's motion, but alternatively requested that the Court apply French law in adjudicating the case if Plaintiff's motion were granted. (Descamps Letter at 1, February 28, 2005.) According to the letter, "[w]e will submit the affidavit of a French expert if French law applies" in support of Defendants' case. (*Id.*) On March 10, 2005, the Court granted Plaintiff's motion to vacate dismissal and referred the matter to Judge Hughes "to confer with the parties as to the further progress of the case whether by settlement, negotiations, motion practice and/or discovery." (Order, March 10, 2005.)

4

On March 21, 2005, Judge Hughes conducted a telephone conference with the parties for the purpose of negotiating settlement again. Appearing during the conference were Plaintiff's counsel, Ms. Descamps and Ms. Hoffman. (*See* Order, March 21, 2005.) Pursuant to the conference, Judge Hughes set a case management schedule that would apply if the parties did not settle the case by March 31, 2005. Specifically, Judge Hughes ordered that discovery be completed by May 31, 2005, that the proposed final pretrial order be submitted by June 30, 2005, and that the peremptory trial date be scheduled for July 19, 2005. (*Id.*)

The parties did not settle the case, and on June 29, 2005, Judge Hughes conducted another telephone conference with the parties. Appearing during the conference were Plaintiff's counsel, Ms. Descamps and Ms. Hoffman. (*See* Order, June 29, 2005.) Pursuant to the conference, Judge Hughes ordered that the parties submit their lists of witnesses and exhibits to be relied on at trial by July 8, 2005. (*Id.*) Judge Hughes further ordered that "**FAILURE TO COMPLY WITH THIS ORDER SHALL RESULT IN ENTRY OF DEFAULT JUDGMENT.**" (*Id.* (emphasis in original).) Plaintiff submitted its list of witnesses and exhibits on July 8, 2005. On July 11, 2005, Judge Hughes issued the final pretrial order. Defendants had not submitted their list of witnesses and exhibits as of the date of the pretrial order.

On July 13, 2005, Judge Hughes again conducted a telephone conference with the parties. Appearing during the conference were Plaintiff's counsel, Ms. Descamps and Ms. Hoffman. (*See* Order, July 13, 2005.) Pursuant to that conference, Judge Hughes ordered that "in-person appearance is required for trial on July 19, 2005" unless the parties consented to trial via video conference and Ms. Descamps assumed the additional expenses associated with the video conferencing. (*Id.*) On July 18, 2005, the Court conducted another telephone status conference, at which Plaintiff's counsel and Ms. Hoffman appeared. Once again, the Court directed that the parties appear for trial. (*See* Minutes of Proceeding, July 18, 2005.)

On July 19, 2005, the Court conducted a conference with Plaintiff's counsel, Defendants and an interpreter, Mr. Smith. (July 19, 2005 Tr. at 2-4.) Defendants did not appear in person

5

and instead participated by telephone. (*Id.*) During that conference, the Court acknowledged receipt of a letter from Ms. Descamps that was faxed to the Court the day before. (*Id.* at 6) Ms. Descamps' letter indicated that she was physically unable to attend the scheduled trial as a result of mental and psychological issues. (*Id.*) In her letter, Ms. Descamps stated that "I could have defaulted but I made every effort to comply with the Court's orders but I cannot physically and psychologist [sic] attend and defend myself." (*See* Descamps Letter, July 20, 2005.) Included with Ms. Descamps' letter was a letter from her doctor concerning her inability to travel to the United States. (July 19, 2005 Tr. at 7.)

To accommodate Ms. Descamps, the Court adjourned the trial for the following day. (*Id.* at 11.) Appearing on July 20, 2005 were Plaintiff's counsel, Defendants and the interpreter, Mr. Smith. (July 20, 2005 Tr. at 3.) Defendants again participated by telephone. (*Id.*) During the conference, Ms. Descamps expressed her intent to attend trial, stating that "if I really was not intending to come to the trial, I wouldn't have done all the work that I have done for it." (*Id.* at 8.) When asked by the Court when she would be well enough to appear for trial, Ms. Descamps stated that "I can't give you an exact time without speaking to my doctor." (*Id.* at 9.) The Court indicated to Ms. Descamps that "[t]he Court has many cases" and that it had "set aside this week and next week for your trial." (*Id.*) The Court instructed Ms. Descamps to confer with her doctor and scheduled another telephone conference for July 21, 2005. (*Id.* at 11.)

On July 21, 2005, the Court conducted a telephone conference with the parties. Appearing for the conference were Plaintiff's counsel, Defendants, Ms. Descamps' doctor and the interpreter, Mr. Smith. (July 21, 2005 Tr. at 3.) During the conference, the Court asked the doctor when Ms. Descamps would be ready to appear at trial.

> THE COURT: The question is, will she be able to travel to the United States in time to participate in the trial on August the 25th, sum [sic] five weeks from now?
>
> DOCTOR: The – I'm not really able to answer that question at this time but my impression is that at the end of August, the 25th of August, she will not be able to travel to the United States.

6

                \*          \*          \*

| | |
|---|---|
| THE COURT: | Would it be wise to ask you to report back in two weeks as to whether or not she will be able to come here to participate in the trial on the 25th of August? |
| DOCTOR: | I could only give you an answer of a medical nature. Two weeks from now I could tell how she's doing, but I'm not sure that I could tell you yes or no. I'm not sure that I would be perfectly capable of doing that. |

                \*          \*          \*

| | |
|---|---|
| THE COURT: | What I'm going to do is, I'm going to adjourn this conference until 10:00 a.m. eastern standard time on August the 3rd. The plaintiff will set up the conference call. At that time I will hear from the doctor and the parties concerning whether I should adjourn the trial scheduled for August 25th or whether it can go forward. |

(*Id.* at 4-6.)

On August 3, 2005, the Court conducted the scheduled telephone conference. Appearing during the conference were Plaintiff's counsel, the president of Hampton Forge, Defendants, Ms. Descamps' doctor and the interpreter. (August 3, 2005 Tr. at 2.) During the conference, Ms. Descamps' doctor stated that "I'm afraid that given the signs and symptoms from which she's suffering, especially the mental harassment around the issue of trial, I'm afraid that her health will not permit her to participate in that trial." (*Id.* at 3.) The Court then sought to determine whether Defendants would appear for trial.

| | |
|---|---|
| THE COURT: | Are you refusing to return to the United States for trial, yes or no? |
| MS. DESCAMPS: | Yes, I've been insulted by Hampton Forge. I've been defamed to my clients by Hampton Forge. I've been morally harassed by Hampton Forge. |
| THE COURT: | So, then your answer is, that you refuse to come, not because you're sick, but because you do not wish to come, correct? |
| MS. DESCAMPS: | Yes, I am sick, and you can see that now I can't even answer you correctly or properly. |
| THE COURT: | Well, I'm trying to understand whether you are refusing to |

|   |   |
|---|---|
| | come to court because you don't want to come, or because you are sick, which is it? |
| MS. DESCAMPS: | In total, I don't understand the American court system, how do you expect me to defend myself in front of an American court? |

\*          \*          \*

| | |
|---|---|
| THE COURT: | Let me see if I understand this now.  Even if your doctor told you that you were well enough to travel to the United States, you still would not come, correct? |
| MS. DESCAMPS: | I can't tell you right now, because I'm sick.  And I want to be judged in France. |

\*          \*          \*

| | |
|---|---|
| THE COURT: | It appears that the defendant has taken several inconsistent positions here.  She has participated in this trial and stated her intent to appear.  She then said she couldn't participate because she could not afford it.  The plaintiff offered to pay her expenses and that of her co-defendant.  She then said she could not participate because she was ill.  I had her doctor on the phone to find out when she would be well enough to proceed.  And now she indicates that she would not appear even if she were not ill, and even if the plaintiff paid her expenses.  I think at this point I should ask the defendant, Descamps, exactly what is her position at the present time.  You may answer. |
| MS. DESCAMPS: | I don't understand – how the Court has been able to apply United States law in France.  I'm not in a physical or mental state to be able to defend myself in this trial. . . . I've never recognized the jurisdiction of the American court.  But, I accept it in deference to the Court. . . . |

\*          \*          \*

| | |
|---|---|
| MR. ROTH: | I'm still unclear, Your Honor, whether she's accepting the jurisdiction of the Court and whether she's going to attend.  So, maybe we could just ask her those questions in two separate parts.  Does she accept the jurisdiction of the American Court? |
| MS. DESCAMPS: | No, I do not accept the jurisdiction of the Court. |

\*          \*          \*

| | |
|---|---|
| THE COURT: | And do I understand that Ms. Descamps does not intend to appear before this Court whether she's well or sick, whether someone pays her way or not, is that correct? |

        \*    \*    \*

  MS. DESCAMPS:  But, I am sick.  I am sick.

(August 3, 2005 Tr. at 6-7, 9-11.)  The Court then questioned Mr. Perrod, who had not asserted that he was ill, to determine whether he intended to appear for trial.

  THE COURT:  Will you appear at the trial in New Jersey, yes or no?

  MR. PERROD:  Absolutely not.

  THE COURT:  All right.  Do you accept the jurisdiction of this Court, yes or no?

  MR. PERROD:  No, I don't.

(*Id.* at 12.)

  Based on these exchanges with Defendants, the Court ordered that the August 25, 2005 trial date be adjourned because Defendants "stated on the record that they will not attend trial on August 25, 2005 . . . ."  (Order, August 4, 2005.)  The Court further ordered that "Plaintiff submit its application for default judgment by August 22, 2005".  (*Id.*)  The Court also ordered that "Defendants may file a response by September 8, 2005, and Plaintiff may file a reply brief by September 15, 2005", and that "[t]he matter will be decided on the papers, unless otherwise notified by the Court."  (*Id.*)

  On August 29, 2005, Plaintiff moved for entry of default judgment.  Defendants have not filed papers in opposition to Plaintiff's motion.  On September 13, 2005, Ms. Hoffman moved for sanctions against Plaintiff and its attorneys.  On October 24, 2005, Plaintiff filed a brief in opposition to Ms. Hoffman's motion and cross-moved for sanctions against her.  These three motions are now before the Court.

  In addition, three motions filed prior to the original trial date currently remain on the docket.  On July 11, 2005, Plaintiff filed a motion seeking to bar Defendants from arguing that foreign law applies in this case.  On July 14, 2005, Plaintiff moved for summary judgment of Defendants' counterclaim.  On July 20, 2005, Defendants cross-moved for summary judgment of Plaintiff's claims.  On July 20, 2005, the Court decided that it would consider the summary

judgment motions as motions for judgment as a matter of law pursuant to Federal Rules of Civil Procedure Rule 50. (July 20, 2005 Tr. at 10.) The Court will therefore address these motions as well.

II.     DISCUSSION

    A.     **Plaintiff's Motion for Entry of Default Judgment**

        1.     **Default Judgment Pursuant to Rule 55**

Default judgment pursuant to Rule 55 may be appropriate where a party fails to appear for trial. In *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912 (3d Cir. 1992), the Third Circuit Court of Appeals noted that according to the language of Rule 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead *or otherwise defend* as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 917 (3d Cir. 1992) (quoting Fed. R. Civ. P. 55(a)) (italics in original). The court observed that "[b]y its very language, the 'or otherwise defend' clause is broader than the mere failure to plead." *Id.* According to the court, "[t]he failure to plead is no greater an impediment to the orderly progress of a case than is the failure to appear at trial or meet other required time schedules, and we see no reason why the former would be subject to a sanction not equally applicable to the latter." *Id.* at 918. The court cited a number of cases in other circuits supporting the proposition that "the district court's power to maintain an orderly docket justifies the entry of a default against a party who fails to appear at trial." *See id.*; *Brock v. Unique Racquetball & Health Clubs*, 786 F.2d 61, 64 (2d Cir. 1986) ("a trial judge, responsible for the orderly and expeditious conduct of litigation, must have broad latitude to impose the sanction of default for non-attendance occurring after a trial has begun"); *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141 (9th Cir. 1989) (affirming Rule 55 default judgment against plaintiff on defendant's counterclaims where plaintiff did not attend pretrial conferences and "fail[ed] to attend on the first day of a trial scheduled months

before"); *Ad West Mktg., Inc. v. Hayes*, 745 F.2d 980, 983-84 (5th Cir. 1984) (affirming Rule 55 default against cross-defendants who failed to file answers or appear on scheduled trial date); *Gulf Coast Fans, Inc. v. Midwest Elecs. Importers*, 740 F.2d 1499, 1512 (11th Cir. 1984) ("The failure to appear at a duly scheduled trial after months of preparation by the parties and by the trial court is a serious offense for which the entry of a default [under Rule 55] is appropriate"); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (defendant's "failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial were sufficient to support a finding that he had 'failed to plead or otherwise defend' under Federal Rule of Civil Procedure 55").

Here, Defendants failed to appear for the trial scheduled for July 19, 2005. During the conference with the parties conducted on August 3, 2005, and after the Court had rescheduled the trial for August 25, 2005, Defendants informed the Court that they would not be appearing for a rescheduled trial even if Plaintiff paid their travel expenses. Based on Defendants' refusal to attend trial in this matter, the Court finds that the entry of default judgment pursuant to Rule 55 is appropriate in this case.

### 2. Default Judgment as a Sanction

The Third Circuit Court of Appeals has instructed that courts deciding motions for entry of default judgment as a sanction engage in a six-part analysis. "In deciding whether to impose a default, the district court must consider: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party [or] the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." *Hoxworth*, 980 F.2d at 919 (citing *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984)). These factors "should be weighed by the district courts in order to assure that the

'extreme' sanction of dismissal or default is reserved for the instances in which it is justly merited." *Poulis*, 747 F.2d at 870. In applying this test, however, "[e]ach factor need not be satisfied for the trial court to dismiss a claim." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221 (3d Cir. 2003).

### a.     Defendants' Personal Responsibility

Defendants have litigated this matter *pro se* since the beginning of this case. Defendants have filed and signed a number of pleadings, motions, briefs and affidavits in their own names as *pro se* litigants. Indeed, Defendants have repeatedly attested to their *pro se* representation. For example, their answer was signed by both Ms. Descamps and Mr. Perrod individually as "Defendants *prose* [sic]". In support of Defendants' motion to dismiss, Ms. Descamps filed a supplemental affidavit stating that "my husband and I . . . are unable to afford a New Jersey lawyer[,] . . . do not speak the language and have had to rely on the services of Ms. Hoffman as a translator." (Descamps Aff. ¶32, June 30, 2004.) Mr. Perrod also filed an affidavit in support of Defendants' motion, which affidavit addressed a number of factual assertions made in Plaintiff's opposition papers. (Perrod Aff., July 2, 2004.) Moreover, Ms. Descamps and Mr. Perrod have appeared during numerous telephone conferences conducted by the Court, with Ms. Hoffman appearing only in the capacity of interpreter for Defendants and to assist in settlement discussions. (Hoffman Aff. ¶2, September 13, 2005 ("I agreed to represent [Defendants] in settlement discussions only and informed them that I was not admitted to practice in New Jersey").) During these telephone conferences, Defendants were repeatedly reminded that they were to appear for trial, originally scheduled for July 19, 2005, then adjourned to August 25, 2005. It was not until August 3, 2005 that Defendants informed the Court that they would not appear for trial regardless of Ms. Descamps' condition. Based on these facts, Defendants are personally responsible for their delays and nonattendance at trial.

12

      **b.**      **Prejudice to Plaintiff**

Plaintiff filed its complaint more than two (2) years ago. Since then, Plaintiff has engaged in extensive discovery, briefing and settlement negotiations. Plaintiff appeared for trial on July 19, 2005. Plaintiff also appeared for a number of conferences that resulted from Defendants' nonattendance at the trial scheduled for July 19, 2005. To accommodate Defendants, the Court rescheduled the trial for August 25, 2005, only to adjourn it because Defendants indicated that they would not appear for trial.

In anticipation of the original and rescheduled trial dates, Plaintiff incurred various costs, including: making witnesses available for trial; arranging for a translator for purposes of scheduling and conducting the trial; arranging for international conference calls for the purpose of scheduling the trial and related matters; paying attorneys' fees in preparing for trial; and being distracted from the ordinary course of its business. *See Hoxworth*, 980 F.2d at 921 ("the prejudice flowing from failure to proceed with a scheduled trial after the case had been pending for more than three years is apparent"). Defendants' failure to appear for trial, and their delay in notifying the Court of that fact, was prejudicial to Plaintiff.

      **c.**      **History of Dilatoriness**

The trial date was set for July 19, 2005 as early as March 21, 2005. (*See* Order, March 21, 2005.) The Court reserved two weeks for the scheduled trial. (*See* July 20, 2005 Tr. at 9.) Because of Ms. Descamps' illness, the Court rescheduled the trial for August 25, 2005. Defendants then waited until August 3, 2005 to inform the Court that they would not appear for trial, and only after the Court directly asked Defendants individually about their intentions. (August 3, 2005 Tr. at 6-12.) Defendants waited more than four (4) months after the original scheduling of the trial on March 21, 2005, and after trial had been already been rescheduled once, to inform the Court that they would not appear regardless of Ms. Descamps' medical condition.

Defendants have been late or non-compliant in other respects as well. During discovery,

13

Defendants failed to respond to Plaintiff's interrogatories. (Order, June 29, 2005.) Defendants also failed to submit information for preparing the final pretrial order, which information Judge Hughes ordered to be submitted by July 8, 2005. (*Id.*) Based on these facts, the Court finds that Defendants have demonstrated a history of dilatoriness.

### d. Willfulness and Bad Faith

Defendants' failure to appear for trial appears to be willful and in bad faith. As the Court noted during the August 3, 2005 conference with the parties, Ms. Descamps has given several inconsistent positions concerning her intent to appear for trial. During that conference, and after being questioned by the Court, Ms. Descamps indicated that she did not accept the Court's jurisdiction and would not attend trial. (*See* August 3, 2005 Tr. at 7, 10.) Furthermore, Mr. Perrod stated that he refused to attend trial because he did not recognize the jurisdiction of the Court and believed that the dispute did not concern him. (*Id.* at 12.) Defendants' reasons for refusing to attend trial in the United States were applicable at the commencement of this action, yet they waited until August 3, 2005 to inform the Court of their refusal, and only after questioning by the Court.

Based on these facts, Defendants' failure to appear for trial and delay in informing the Court of their planned absence were willful and in bad faith.

### e. Alternative Sanctions

Alternative sanctions would not be effective in this case in light of the Court's repeated but failed efforts to accommodate Defendants and their admitted refusal to attend trial. Defendants were aware of the July 19, 2005 trial date approximately four (4) months in advance. (*See* Order, March 21, 2005.) On July 13, 2005, Judge Hughes ordered that "in-person appearance is required for trial on July 19, 2005" unless Defendants arranged for trial via video conference. (Order, July 13, 2005.) During the telephone status conference conducted on July

14

18, 2005, the Court directed the parties to appear for trial. (Minutes of Proceeding, June 18, 2005.) Despite the Court's repeated instructions, Defendants failed to appear for trial on June 19, 2005. Moreover, after the Court had rescheduled the trial for August 25, 2005, Defendants admitted to the Court that they did not plan to attend. (August 3, 2005 Tr. at 6-12.) At this point, the only effective sanction against Defendants would be the entry of default judgment.

### f. Meritoriousness of the Claim or Defense

"In considering whether a claim or defense appears to be meritorious for this inquiry . . . [a] claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *Poulis*, 747 F.2d at 869-70. *See also Hoxworth*, 980 F.2d at 922 ("We decline to require the district court to have a mini-trial before it can impose a default").

Plaintiff alleges that "[i]n or about February 2000, Hampton Forge engaged Defendants to assist in designing flatware for sale" and that it "provided Defendants with travel, training, advice, expenses and education so that [Ms. Descamps] could develop such designs." (Compl. ¶13.) According to Plaintiff, "[i]n exchange for Agnes Descamps' work, Hampton Forge agreed to compensate Defendants" and that "[s]uch compensation has been paid to Defendants." (*Id.* ¶14.) Plaintiff further alleges that "Defendants have claimed that Hampton Forge's works belong to them and not Hampton Forge." (*Id.* ¶15.) These allegations, if proven at trial, would support Plaintiff's recovery against Defendants.

### 3. Determination of Damages

In entering a default judgment, "[i]f the damages are not for a 'sum certain or for a sum which can by computation be made certain,'" . . . "the 'court may conduct such hearings or order such references as it deems necessary and proper.'" *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (quoting Fed. R. Civ. P. 55(b)(1) and (b)(2)). Here, Plaintiff seeks both

injunctive and monetary relief for Defendants' breach of contract. The amount of damages that should be awarded in this case has not been calculated and remains uncertain. The Court will therefore order a hearing to determine the amount of damages to be awarded to Plaintiff.

        B.      **Ms. Hoffman's Motion for Sanctions**

On September 14, 2005, Ms. Hoffman filed a motion seeking sanctions against Plaintiff and its counsel pursuant to Federal Rules of Civil Procedure Rules 11 and 45(c)(1). According to Ms. Hoffman, Plaintiff and its counsel: (1) served a frivolous subpoena upon her; (2) harassed and intimidated Defendants; and (3) made frivolous arguments during the course of litigating this case. (Hoffman Aff. ¶¶3, 5, 8, September 13, 2005.)

The Court notes at the outset that Ms. Hoffman is neither a party to this case nor counsel to Defendants. According to Ms. Hoffman, "I agreed to represent [Defendants] in settlement discussions only and informed them that I was not admitted to practice in New Jersey." (*Id.* ¶2.) Ms. Hoffman further states in her affidavit that "[b]ecause I am not admitted to the bar of the State of New Jersey I cannot move for sanctions against [Plaintiff's counsel] other than in the context of this subpoena . . . ." (*Id.* ¶7.) Ms. Hoffman urges the Court, however, to sanction Plaintiff and its counsel "on its own motion." (Hoffman Br. at 5.)

Sanctions against Plaintiff and its counsel would be inappropriate on the basis of Ms. Hoffman's subpoena. Rule 45(c)(1) provides that:

> A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

Fed. R. Civ. P. 45(c)(1).

Plaintiff subpoenaed Ms. Hoffman because she participated in the settlement conferences between the parties, and Plaintiff believed that Defendants planned to raise those negotiations as an issue during trial. Indeed, the final pretrial order that Judge Hughes issued on July 11, 2005,

16

included Ms. Hoffman as a potential witness:

> Depending on the Court's ruling on the admissibility of settlement discussions and negotiations between the parties offered by defendants, plaintiff additionally reserves the right to rely on the following witnesses:
>
> > Glen H. Torregiani, Esq.
> > Barbara Hoffman, Esq.

(Pretrial Order at 3, July 11, 2005.) Plaintiff later withdrew its subpoena on Ms. Hoffman when it appeared that her testimony would be unnecessary. In a letter dated July 14, 2005, Plaintiff's counsel informed Ms. Hoffman that "[b]ased on you and your client's statements during yesterday's conferences before Judge Hughes, as well as your comments to me regarding the scope of your factual knowledge, we are withdrawing the trial subpoena we previously served upon you . . . ." (Dunham Decl. Ex. I.) In another letter dated the same day, Plaintiff's counsel asked Ms. Hoffman to "please confirm that you have received my withdrawal of the trial subpoena served upon you." (Dunham Decl. Ex. J at 2.) Based on the legitimate basis of Plaintiff's subpoena and its withdrawal five (5) days prior to trial, sanctions for issuing the subpoena on Ms. Hoffman is inappropriate.

Ms. Hoffman also seeks sanctions against Plaintiff and its counsel pursuant to Rule 11, which provides:

> (c)     Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation. . . .
>
> > (1)(B)    On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

Fed. R. Civ. P. 11(c).

Ms. Hoffman alleges that Plaintiff harassed and intimidated Defendants and made frivolous arguments throughout the course of this case. These allegations, however, are largely

conclusory. Ms. Hoffman alleges only two specific acts of misconduct by Plaintiff or its counsel: (1) sending a letter dated July 6, 2005 to Defendants' client concerning the lawsuit; and (2) referring in its brief to a letter by Ms. Hoffman dated July 14, 2005 that did not in fact exist. (Hoffman Decl. ¶¶5, 7, September 13, 2005.) Ms. Hoffman fails to provide evidence supporting her assertions. Without more, these assertions are insufficient to permit sanctions pursuant to Rule 11 against Plaintiff or its counsel. Ms. Hoffman's motion is denied.

### C. Plaintiff's Cross-Motion for Sanctions Against Ms. Hoffman

Plaintiff has cross-moved for sanctions pursuant to Rule 11 against Ms. Hoffman. According to Plaintiff, Ms. Hoffman's motion for sanctions was frivolous and therefore warrants sanctions. Although the Court denies Ms. Hoffman's motion, Ms. Hoffman's motion does not appear sufficiently frivolous to justify sanctions. Plaintiff's cross-motion for sanctions is denied.

### III. CONCLUSION

For the reasons set forth above: (1) Plaintiff's motion for entry of default judgment is granted; (2) Ms. Hoffman's motion for sanctions against Plaintiff and its counsel is denied; and (3) Plaintiff's cross-motion for sanctions against Ms. Hoffman is denied. In light of the Court's grant of Plaintiff's motion for entry of default judgment, the Court dismisses as moot: (1) Plaintiff's motion to bar Defendants from arguing that foreign law applies in this case; (2) Plaintiff's motion for summary judgment of Defendants' counterclaim; and (3) Defendants' cross-motion for summary judgment of Plaintiff's claims. An appropriate form of order is filed herewith.

Dated:  February 23, 2006

                <u>s/ Garrett E. Brown, Jr.</u>
                GARRETT E. BROWN, JR., U.S.D.J.